AO 106 (Rev. 04/010) Application for Search Warrant          AUTHORIZED AND APPROVED/DATE:   /S Bow Bottomly 7/25/2024

# UNITED STATES DISTRICT COURT
for the
__WESTERN__ DISTRICT OF __OKLAHOMA__

In the Matter of the Search of:  )
)
a black Apple iPhone in a green case with stickers  )   Case No: M-24-585-AMG
in the possession of the FBI Oklahoma City at  )
3301 West Memorial Rd.  )
Oklahoma City, Oklahoma 73134  )

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is (*check one or more*):
☒ evidence of the crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| | |
|---|---|
| 18 U.S.C. § 922(k) | Possession of Firearm with an Obliterated Serial Number |
| 18 U.S.C. §§ 1152 and 1111 | Murder in the Second Degree |
| 18 U.S.C. §§ 1152 and 1112 | Manslaughter in the First Degree |

The application is based on these facts:

See attached Affidavit of Special Agent Steven Carrick, Federal Bureau of Investigation, which is incorporated by reference herein.
☒ Continued on the attached sheet(s).
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
*Applicant's signature*

Steven Carrick
Special Agent
Federal Bureau of Investigations

Sworn to before me and signed in my presence.

Date: __7/26/24__

_____
*Judge's signature*

City and State: __Oklahoma City, Oklahoma__      AMANDA MAXFIELD GREEN, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Steven Carrick, a Special Agent of the Federal Bureau of Investigation (FBI), Oklahoma City Division, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I have been employed as a Special Agent with the FBI since February 2022 and have been assigned to the Oklahoma City Division of the FBI for approximately 2 years. I completed four months of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, forensic techniques, and a variety of other subjects. Prior to my employment with the FBI, I was a Police Officer in Nashville, Tennessee for nine years.

3. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the property specifically described in **Attachment A** of this Affidavit for evidence, fruits, and instrumentalities of Possession of Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. § 922(k), Murder in the Second Degree in violation of 18 U.S.C. §§ 1152 and 1111, and Manslaughter in the First Degree, in violation of 18 U.S.C. §§ 1152 and 1112, committed by Jesse Wayne James Keenan (KEENAN).

This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is an Apple iPhone in a green case with stickers, hereinafter the "**Subject Device.**" The **Subject Device** is currently in the possession of FBI Oklahoma City at 3301 West Memorial Road Oklahoma City, Oklahoma 73134, in the Western District of Oklahoma. The phone number for the **Subject Device** is 580-736-1768 and is associated with KEENAN. There is probable cause to believe that a search of the **Subject Device** will lead to evidence, fruits, and instrumentalities of the aforementioned crimes.

5. The applied-for warrant would authorize the forensic examination of the **Subject Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. On July 19, 2024, officers with the Duncan Police Department in Duncan, Oklahoma, were dispatched to 2406 Country Club Road Duncan, Oklahoma 73533, within the boundaries of the Chickasaw Nation and in the Western District of Oklahoma, for a shooting that just occurred. Officers arrived and located a male, later identified as K.C.[1], unresponsive and bleeding profusely. Officers attempted to provide medical attention to K.C. until paramedics arrived. Medics arrived and checked K.C.'s vitals. He was pronounced deceased around 9:44 P.M. K.C. possessed Indian blood and was an enrolled member of the Chickasaw Nation Tribe.

---

[1] K.C.'s identity is known to the FBI.

7.     Officers began interviewing witnesses who identified the subject who shot K.C. as KEENAN. Officers canvassed the area looking for KEENAN. A vehicle matching the description of KEENAN's mother's was seen at the Chisolm Corner gas station on the corner of Highway 81 and Elder Avenue. Police conducted an investigative stop on the vehicle and located KEENAN in the passenger seat. KEENAN was detained and placed into the back of a Duncan Police vehicle.

8.     Investigators with the Duncan Police Department read KEENAN his Miranda Rights, which he waived. Investigators conducted a gunshot residue swab on KEENAN and asked if he washed his hands after firing the gun and he responded, "No." KEENAN stated he washed his hands before firing the gun. He was transported to Duncan Police Department to be interviewed.

9.     Duncan Police Detectives interviewed KEENAN's mother, Teri Keenan, who stated KEENAN's father, Aaron Keenan, was enrolled in the Choctaw Tribe and they were in the process of enrolling KEENAN.

10.    Investigators with the FBI interviewed KEENAN at Duncan Police Department. KEENAN waived his Miranda Rights and agreed to answer questions. KEENAN stated on July 19, 2024, he was spending time with his girlfriend, Alexis Ketchum. Ketchum became intoxicated and started telling KEENAN that she was going to have her child's father come "beat his ass." KEENAN brought Ketchum back to her apartment and he went back to his residence. Ketchum continued to tell KEENAN via phone communications that she would have her child's father "beat his ass." KEENAN retrieved his silver and black Smith and Wesson .40 caliber pistol with a blue laser and had his sister's boyfriend, Nathaniel Williams, drive him to Ketchum's residence. When KEENAN started to walk inside Ketchum's apartment, he was met by K.C. who immediately punched KEENAN in the face and grabbed his left arm. KEENAN felt K.C.'s hand grab his neck,

3

but quickly released. KEENAN reached in his waistband for his pistol. KEENAN knew the pistol did not have a round chambered when he arrived but when he was attempting to pull it out of his waistband, he pushed and pulled causing the pistol to chamber a round. KEENAN knew by pulling the trigger, the gun would fire a round. KEENAN drew the pistol from his waistband and pointed it at K.C. He pulled the trigger and fired one round, striking K.C. in the side of his chest. KEENAN retreated and threw the pistol into the bushes around 1900 Park Drive Duncan, Oklahoma.

11. KEENAN is believed to have been in a relationship with Alexis Ketchum since early July of 2024.

12. Investigators with an article search canine canvassed the area around 1900 Park Drive and located the pistol described by KEENAN. Upon photographing the pistol, it was found the serial number of the pistol was scratched off the metal plate on the frame of the firearm.

13. During a recorded jail phone call after KEENAN's arrest, KEENAN told a family member he needed their help to delete his Snapchat account messages. He then instructed her how to do it. The **Subject Device** may still have record of the Snapchat messages since it was placed in airplane mode upon its seizure.

## TECHNICAL TERMS

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call

4

log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an

5

extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

15. Based on my training and experience, I know examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggest who possessed or used the device. I further know these Cell Phone devices have capabilities that allow them to serve as wireless telephones, digital cameras, GPS navigation devices and Internet Devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. Based on my knowledge, training and experience, evidence of criminal activity, to include motives, operational planning, operational preparation, and other relevant evidence will be found in the criminal's electronic devices including their cellular telephone. This evidence

6

often includes location data stored in the internal memory of the cellular telephone, encrypted communications between co-conspirators (if there were co-conspirators), non-encrypted communications between co-conspirators in the form of emails and text messages, and other accounts linked to the criminal and their criminal activity to include social media accounts (such as Snapchat) which can be used in the planning and execution of a crime.

18. Based on my knowledge, training and experience, criminals who use firearms during the commission or their crimes often take pictures of their firearms or of themselves using or holding their firearms. These images or videos would likely be found in the content of the **Subject Device**. In this matter, it is necessary to investigate whether the firearm used to kill K.C. was owned or possessed by KEENAN prior to the shooting.

19. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Device** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of

7

peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. In addition to any electronic evidence described above, I am seeking authority to search for any items detailed in Attachment B.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. Based on all the above-listed facts and circumstances, your Affiant believes that probable cause exists for a search warrant authorizing the examination of the **Subject Device** described in Attachment A to seek the items described in Attachment B, which will constitute evidence and instrumentalities concerning violations of Possession of Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. § 922(k), Murder in the Second Degree, in violation of 18 U.S.C. §§ 1152 and 1111, and Manslaughter in the First Degree, in violation of 18 U.S.C. §§ 1152 and 1112.

24. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) &

(c)(1)(A). Specifically, the Court is "a district court of the United States… that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

25.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted.

*[signature]*

Steven Carrick
Special Agent, FBI

Subscribed and sworn to before me on July 25, 2024:

*[signature]*
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a black Apple iPhone in a green case with stickers hereinafter the "**Subject Device**," which is pictured below. The **Subject Device** is currently in the possession of FBI Oklahoma, at 3301 West Memorial Road Oklahoma City, Oklahoma 73134. This warrant authorizes the forensic examination of the **Subject Device** for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

1. All electronically stored information and records on the **Subject Device** described in Attachment A that is evidence of and relates to violations of 18 U.S.C. § 922(k), (Possession of Firearm with an Obliterated Serial Number), 18 U.S.C. §§ 1152 and 1111 (Murder in the Second Degree), and 18 U.S.C. §§ 1152 and 1112 (Manslaughter in the First Degree), including:

   a. any and all records related to the murder of K.C.;

   b. any and all records related to communications between K.C. and Alexis Ketchum, or about K.C. and Alexis Ketchum.

   c. any and all records regarding acts of violence or suspected acts of violence committed by KEENAN;

   d. contact information for individuals identified as discussing topics related to violence or abuse or suspected violence or abuse;

   e. records relating to communication with others as to the criminal offenses above; including telephone numbers and/or IP addresses assigned to the individual devices, incoming and outgoing voice messages; text messages; multimedia messages]; emails; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Snapchat, Wickr, Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

2

f. records relating to documentation or memorialization of the criminal offenses above, including voice memos, photographs, notes, memos, videos, emails, and other audio and video media, and all information and metadata attached thereto including device information, geotagging information, and information of the relevant dates related to the media;

g. records related to KEENAN's use and ownership of the firearm believed to be used by him to shoot K.C., including photographs and videos.

h. records relating to the planning and execution of the criminal offense above, including Internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

i. application data, including but not limited to Facebook, Instagram, Snapchat, Twitter, Kik, Wickr, WhatsApp, Messenger, Youtube, relating to the criminal offenses above;

j. Evidence of user attribution showing who used or owned the **Subject Device**, such as logs, phonebooks, saved use names and passwords, documents, and browsing history.

k. any records regarding KEENAN's location data beginning July 19, 2024, until July 20, 2024;

3

2.	Evidence of user attribution showing who used or owned the **Subject Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

As used above, the terms "records" and "information" include all foregoing items of evidence in whatever form and by whatever means they may have been created.